FILED IN OPEN COURT

10-18-2017

CLERK, U. S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 3:17-cr-202-J-39JBT

ASHISH BAHL

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by

W. Stephen Muldrow, Acting United States Attorney for the Middle District

of Florida, and the defendant, ASHISH BAHL, and the attorneys for the

defendant, Allan F. Brooke, II, Esq. and O. David Barksdale, Esq., mutually

agree as follows:

A.   **Particularized Terms**

1.   Count Pleading To

The defendant shall enter a plea of guilty to Count One of the

Information.  Count One charges the defendant with conspiracy, in violation

of 18 U.S.C. § 371.

2.   Maximum Penalties

Count One carries a maximum sentence of 5 years'

imprisonment, a fine of $250,000, a term of supervised release of not more

Defendant's Initials AB                         AF Approval BB

than 3 years, and a special assessment of $100 per felony count due on the date of sentencing. A violation of the terms and conditions of supervised release carries a sentence of not more than 2 years of imprisonment, as well as the possibility of an additional term of supervised release. With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense(s), and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community, as set forth below.

3.   <u>Elements of the Offense</u>

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty. The elements of Count One are:

<u>First:</u>     That two or more persons, in some way agreed to try to accomplish a shared an unlawful plan;

<u>Second:</u>     That the Defendant knew the unlawful purpose of the plan and willfully joined in it;

<u>Third:</u>     That during the conspiracy, one of the conspirators knowingly engaged in at least one overt act as described in the information; and

<u>Fourth:</u>     That the overt act was committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy.

4.   <u>Indictment Waiver</u>

Defendant will waive the right to be charged by way of indictment before a federal grand jury.

5.   <u>No Further Charges</u>

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement.

6.   <u>Mandatory Restitution to Victim of Offense of Conviction</u>

Pursuant to 18 U.S.C. §§ 3663A(a) and (b), and 2248, defendant agrees to make full restitution.  Although it appears that restitution has been made in this case, if it is determined that any additional restitution is warranted or appropriate, Defendant agrees to pay said amount.

7.   <u>Guidelines Sentence</u>

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement.  As described below in the factual basis, the parties agree that the loss was $135,396.06 and

Defendant's Initials A B                                  3

that the offense conduct was not sophisticated. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

8.    <u>Acceptance of Responsibility - Three Levels</u>

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the

defendant has qualified for a downward adjustment of a third level for

acceptance of responsibility rests solely with the United States Attorney for the

Middle District of Florida, and the defendant agrees that the defendant cannot

and will not challenge that determination, whether by appeal, collateral attack,

or otherwise.

9.   Low End

At the time of sentencing, and in the event that no adverse

information is received suggesting such a recommendation to be unwarranted,

the United States will recommend to the Court that the defendant receive a

sentence at the low end of the applicable guideline range, as calculated by the

Court.  The defendant understands that this recommendation or request is not

binding on the Court, and if not accepted by the Court, the defendant will not

be allowed to withdraw from the plea.

10.   Cooperation - Substantial Assistance to be Considered

Defendant agrees to cooperate fully with the United States in the

investigation and prosecution of other persons, and to testify, subject to a

prosecution for perjury or making a false statement, fully and truthfully before

any federal court proceeding or federal grand jury in connection with the

charges in this case and other matters, such cooperation to further include a

full and complete disclosure of all relevant information, including production

Defendant's Initials A.P.                    5

of any and all books, papers, documents, and other objects in defendant's

possession or control, and to be reasonably available for interviews which the

United States may require.  If the cooperation is completed prior to

sentencing, the government agrees to consider whether such cooperation

qualifies as "substantial assistance" in accordance with the policy of the United

States Attorney for the Middle District of Florida, warranting the filing of a

motion at the time of sentencing recommending (1) a downward departure

from the applicable guideline range pursuant to USSG §5K1.1, or (2) the

imposition of a sentence below a statutory minimum, if any, pursuant to 18

U.S.C. § 3553(e), or (3) both.  If the cooperation is completed subsequent to

sentencing, the government agrees to consider whether such cooperation

qualifies as "substantial assistance" in accordance with the policy of the United

States Attorney for the Middle District of Florida, warranting the filing of a

motion for a reduction of sentence within one year of the imposition of

sentence pursuant to Fed. R. Crim. P. 35(b).  In any case, the defendant

understands that the determination as to whether "substantial assistance" has

been provided or what type of motion related thereto will be filed, if any, rests

solely with the United States Attorney for the Middle District of Florida, and

the defendant agrees that defendant cannot and will not challenge that

determination, whether by appeal, collateral attack, or otherwise.

11.   <u>Use of Information - Section 1B1.8</u>

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

12.   <u>Cooperation - Responsibilities of Parties</u>

a.   The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime.  However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b.   It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest

knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1)    The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2)    The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement.  With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by

Defendant's Initials A. I S.                    8

information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)     The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)     The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)     The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

13.   <u>Forfeiture</u>

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), whether in the possession or control of the United States or in the possession or control of the defendant or defendant's nominees.  The assets to be forfeited specifically include  a money judgment in the amount of $135,396.06, representing the amount of proceeds obtained as a result of the offense charged in Count One of the Information unless the defendant pays this amount before sentencing.  The defendant further herein consents to the filing of a motion by the United States for immediate entry of a Forfeiture Money Judgment.

The defendant also hereby agrees to waive all constitutional, statutory and procedural challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the

charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to the provisions of Rule 32.2(b)(1)(A), the United States and the defendant request that promptly after accepting this Plea Agreement, the Court make a determination that the government has established the amount of the proceeds of the offense(s) to which defendant is pleading guilty is $135,396.06, and enter an order of forfeiture. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees that the United States shall, at its option, be entitled to the forfeiture of any property (substitute assets) of the defendant up to the value of the money judgment. The Court shall retain jurisdiction to settle any disputes arising from application of this clause. The defendant

Defendant's Initials A.B.                     11

agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

The defendant agrees to take all steps necessary to identify and locate all substitute assets and to transfer custody of such assets to the United States before the defendant's sentencing. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG §1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of his cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to any substitute assets before the defendant's sentencing. In addition to providing full and complete information about substitute assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

**B.   Standard Terms and Conditions**

    1.   Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, __shall__ order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (18 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the

Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The defendant understands that this agreement imposes no limitation as to fine.

    2.    <u>Supervised Release</u>

        The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

    3.    <u>Immigration Consequences of Pleading Guilty</u>

        The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

    4.    <u>Sentencing Information</u>

        The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant

factual information, including the totality of the defendant's criminal activities,

if any, not limited to the count(s) to which defendant pleads, to respond to

comments made by the defendant or defendant's counsel, and to correct any

misstatements or inaccuracies. The United States further reserves its right to

make any recommendations it deems appropriate regarding the disposition of

this case, subject to any limitations set forth herein, if any.

5.   Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P.

32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United

States Attorney's Office within 30 days of execution of this agreement an

affidavit reflecting the defendant's financial condition. The defendant

promises that his financial statement and disclosures will be complete,

accurate and truthful and will include all assets in which he has any interest or

over which the defendant exercises control, directly or indirectly, including

those held by a spouse, dependent, nominee or other third party. The

defendant further agrees to execute any documents requested by the United

States needed to obtain from any third parties any records of assets owned by

the defendant, directly or through a nominee, and, by the execution of this

Plea Agreement, consents to the release of the defendant's tax returns for the

previous five years. The defendant similarly agrees and authorizes the United

Defendant's Initials A.B.-                    15

States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.    <u>Sentencing Recommendations</u>

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any

recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.   Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.    <u>Middle District of Florida Agreement</u>

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.    <u>Filing of Agreement</u>

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.    <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation

and advice received from defendant's undersigned counsel (if any).  The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement.  The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.    Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set

forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12.   <u>Entire Agreement</u>

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13.   Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this ___18___ day of October, 2017

W. STEPHEN MULDROW
Acting United States Attorney

ASHISH BAHL
Defendant

MARK B. DEVEREAUX
Special Assistant
United States Attorney

ALLAN F. BROOKE, II, ESQ.
Attorney for Defendant

JASON P. MEHTA
Assistant United States Attorney

DAVID O. BARKSDALE, ESQ.
Attorney for Defendant

FRANK M. TALBOT
Assistant United States Attorney
Chief, Jacksonville Division

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                          CASE NO. 3:17-cr- 202 -J-39JBT

ASHISH BAHL

<u>PERSONALIZATION OF ELEMENTS</u>

1.     Do you admit between in or about June 2012 through early 2015, at
Jacksonville, Florida, in the Middle District of Florida, and elsewhere, that
you agreed with others to try to accomplish a shared and unlawful plan as
charged in the Information, that is, mail fraud and wire fraud?

2.     Do you admit that you knew the unlawful purpose of the plan and
willfully joined in it?

3.     Do you admit that during the conspiracy, one of the conspirators
engaged in at least one overt act as described in the Information, such as overt
act number 6, where between on or about January 24, 2014, through on or
about August 22, 2014, at Jacksonville, Florida, you received a series of five
kick-back checks from the window seal contractor, totaling $345,000, which
were all deposited into a corporate account controlled by you?

Defendant's Initials _A B_ .                    22

4.     Do you admit that the overt act was committed at or about the time
alleged and with the purpose of carrying out or accomplishing some objective
of the conspiracy?

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                         CASE NO. 3:17-cr-

ASHISH BAHL

### FACTUAL BASIS

Ashish BAHL (BAHL) is a businessman who engaged in fraudulent

business activities related to the "SunTrust Bank" (SunTrust) building located

near the Jacksonville Landing.  From September 2005 to March 2015, the

ownership of the building was structured as a business condominium (condo),

governed by certain charter documents. In 2009, Parador Partners LLC

(Parador) purchased a majority interest in the building, which was in financial

distress.  At one point, Parador owned approximately 73% of the office

condos in the building, and carried an even greater share of the operating

expenses.  The condominium owners were members of a condo association

called The River Watch at City Centre Condominium Association, Inc. (River

Watch).

Based upon articles of incorporation for River Watch, Parador oversaw the

property management company for the condo association.  In that regard,

Parador selected the property management company and, for all practical

purposes, controlled the board of directors for the condo association.

Riverwatch Management was contracted to manage the SunTrust building. The controlling interest by Parador enabled BAHL to commit the fraud that forms the prosecution in this case.

Essentially, the fraud in this case was that BAHL would significantly inflate special assessments for various building expenses and intentionally lead the other condo owners to believe that the invoices they were being presented with were correct and accurate, when in fact, they were inflated. As described below, BAHL, with the assistance of others, would make agreements with contractors to submit an inflated invoice for various special assessment maintenance issues, which were paid by Riverwatch as if the inflated expenses were correct. Then, as part of an agreement with the contractor, the contractor would "kick-back" the majority of the invoiced amount to another of BAHL's companies, specifically, Dellwood Associates. Although the business was complex, the fraud was not sophisticated.

1)     **Mold Remediation**

In June 2012, a mold issue was discovered in the SunTrust building on a floor owned by a delinquent owner. Due to the health issues it created, a professional cleaning company was required to perform a thorough cleaning of the impacted area of the building. Investigation has confirmed that BAHL,

Defendant's Initials _AB_ -                    25

through Riverwatch, secured an invoice from a cleaning company for $110,000. This resulted in Riverwatch sending the condo owners invoices for a special assessment according to their ownership interests. The contractor received the $110,000 from Riverwatch, however, as agreed, kicked-back a total of $95,000 of the $110,000 to BAHL. The money was kicked-back to BAHL by checks payable to an entity known as "Dellwood." This entity was controlled by BAHL.

Further, it is noteworthy that Parador paid its portion of the inflated $110,000 mold invoice, which was roughly based on its ownership interest in the building (approximately 73%). This amounted to $73,735.69, half of which was paid by BAHL, so that BAHL wrongly received $58,132.15 from this component of fraud, which went into BAHL's Dellwood account.

| **Mold Remediation Loss/Gain:** | Kick-Back amount | $95,000.00 |
|---|---|---|
| | Amount paid by BAHL | - $36,867.85 |
| | | $58,132.15 |

## 2)   Window Seal Fraud

In early 2014, the window seals for the building needed replacing. BAHL found a contractor who would assist BAHL with the inflated invoice and kick-back scheme. In this component of the fraud, the inflated invoices sent to the office condo owners reflected that the assessment for the window

seal repair was $836,440.  Riverwatch only collected $608,156 of which

$560,686.17 (92.19%) was paid by Parador.  Bahl paid one half of this, or

$280,343.09.  Riverwatch paid $465,000 to the contractor which was allegedly

to replace all of the window seals in the outside window panels in the twenty-

three floor commercial building.  In reality, the agreement with the contractor

was that the contractor would only replace a much smaller portion of the

window seals at that time.  BAHL directed the contractor as to which window

seals to replace.

However, as with the mold remediation, BAHL had the contractor

kick-back the majority of the inflated invoiced payment to BAHL via

Dellwood.  In fact, the contractor kicked-back some 61.53% of what it was

paid.  Over the course of the work, the contractor submitted a total of seven

invoices to Riverwatch.  Following the payments by Riverwatch to the

contractor, the contractor sent a total of five kick-back checks, totaling

$345,000, back to BAHL, all payable to Dellwood.  Therefore, the real work

only cost $120,000, of which approximately $110,628 (92.19%) was paid by

Parador (BAHL).

| **Window Seal Loss/Gain:** | Kick-Back amount | $345,000.00 |
| | Amount paid by BAHL | $280,343.09 |
| | | $ 64,656.91 |

Defendant's Initials A B -                    27

### 3) Theft for Personal Items by BAHL

In addition to BAHL defrauding his condo owners, BAHL also used Riverwatch's bank account for personal expenses. On two occasions, BAHL used the condo association's money (Riverwatch) to pay for personal expenses.

### A) Air Conditioner

BAHL has a large home in the Atlanta area. In November 2013, BAHL had an air-conditioning company replace an air-conditioner at his guest house, which was used for his business. The bill issued by the company was for $5,457. A Riverwatch check which was used to pay that invoice.

### B) Children's Bedroom Remodeling

BAHL had his children's bedroom remodeled by a contractor. The cost of the remodeling was $7,150. A Riverwatch check was issued in August 2014, to pay for the remodeling.

Gain from stealing from Riverwatch:

| | |
|---|---|
| Air-Conditioner | $5,457 |
| Room renovation | $7,150 |
| | $12,607 |

The cumulative dollar amount of fraud proceeds received by BAHL from his fraudulent conduct totals approximately $135,396.06.

Defendant's Initials _A B._            28